UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **SAM LOUIS, III** <br> **Plaintiff,** | **CIVIL ACTION NO.** |
| v. | JUDGE |
| **EXXON MOBIL CORPORATION,** <br> **EXXONMOBIL BATON ROUGE** <br> **PLASTICS PLANT** <br> **Defendants,** | **MAGISTRATE JUDGE** |

## COMPLAINT

**NOW INTO COURT**, through his undersigned counsel, comes the Plaintiff, Sam Louis, III, who respectfully represents as follows:

### JURISDICTION AND VENUE ALLEGATIONS:

1.

This court has subject-matter jurisdiction herein pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. This is an action for damages arising out of the Defendants' violations of Title VII of the 1964 Civil Rights Act and 42 U.S.C. § 1981(a). Plaintiff asserts that he was denied a transfer and training due to his race. Plaintiff also asserts that he was terminated due to his alleged conduct while similarly situated Caucasian employees were not terminated for substantially the same conduct. This court has supplemental jurisdiction over the Plaintiff's state law claims in accordance with 28 U.S.C. § 1367 arising from the Defendant's violations arising under the Louisiana Employment Discrimination Law ("LEDL") La. R.S. 23:301, *et seq*.

2.

Venue is appropriate in the United States District Court for the Middle District of Louisiana, pursuant to 28 U.S.C. § 1391(a) because the events giving rise to this action occurred

in this judicial district, the Defendant Exxon Mobil Corporation's principal place of business in Louisiana is in this judicial district, and the Defendant ExxonMobil Baton Rouge Plastics Plant is located in this judicial district.

## **PARTIES:**

3.

The Plaintiff, Sam Louis, III is a person of the full age of majority and a citizen and resident of West Baton Rouge Parish, Louisiana. Plaintiff was formerly employed at the ExxonMobil Baton Rouge Plastics Plant located in East Baton Rouge Parish.

4.

Named defendant herein is Exxon Mobil Corporation (hereinafter "Exxon Mobil"), a non-Louisiana corporation with its principal business establishment in Louisiana located at 320 Somerulos Street, Baton Rouge, Louisiana 70802. Also named defendant herein is ExxonMobil Baton Rouge Plastics Plant (hereinafter "BRPP"), believed to be a subsidiary of Exxon Mobil Corporation, with its principal business establishment located at 11675 Scotlandville Avenue, Baton Rouge, Louisiana 70807.

## **INTRODUCTION:**

5.

Plaintiff, Sam Louis, III, is an African-American and thus belongs to a protected category.

6.

Plaintiff, Sam Louis, III, first went to work with Exxon Mobil Baton Rouge Plastics Plant on January 2, 2001 as a Process Technician.

7.

Throughout his employment, the Plaintiff was a good and diligent employee who served the needs of his employer to the best of his abilities. During his employment, the Plaintiff received recognition for his good work performance on several occasions. The Plaintiff's employment was terminated on April 12, 2016.

8.

On April 25, 2016, the Plaintiff filed an EEOC charge of race discrimination.

9.

On May 2, 2016, the Plaintiff received from the EEOC a right to sue letter regarding Plaintiff's claim of race discrimination under Title VII of the Civil Rights Act of 1964, as amended (EEOC Charge No. 461-2016-01019).

**FACTUAL ALLEGATIONS:**

10.

In 2012, the Defendant's Maintenance Department was accepting transfers to fill openings from the Operations Department, where the Plaintiff was employed as an operator. At that time, two similarly situated Caucasian employees were transferred from Operations to the Maintenance Department to fill openings. Plaintiff was interested in transferring to the Maintenance Department and had the approval of his unit manager in Operations to transfer at that time. However, at that time, the Plaintiff could not transfer to the Maintenance Department because he was in the process of the building a house and the shift work schedule in Operations allowed him more time to complete his house compared to the regular day schedule of the Maintenance Department.

11.

Approximately one year later, 2013, the Plaintiff made several requests to transfer from the Operations Department to an open position in the Maintenance Department because the Plaintiff had completed his house and was ready to transfer from Operations to Maintenance since the Maintenance Department was still accepting transfers from the Operations Department. The Plaintiff was qualified for the open position in the Maintenance Department. However, the Plaintiff's requests for a transfer to the Maintenance Department were repeatedly denied without justification.

12.

On or about August 2013, the Plaintiff received permission from his supervisor to go to human resources to request the transfer to the Maintenance Department. The Plaintiff proceeded to go to the Human Resources Manager for BRPP, a Caucasian, and requested a transfer to an open position in the Maintenance Department. The Plaintiff was denied a transfer to the Maintenance Department, even though there were openings that still existed in Maintenance and he (the Plaintiff) was qualified for the requested position. There was no justification given to the Plaintiff for this denial.

13.

Subsequently, on or about November 2013, the Plaintiff again requested a transfer to an open position in the Maintenance Department. At this time, the Plaintiff's request to transfer to Maintenance was denied by his new unit manager, Chad Holman, a Caucasian, even though there were openings in Maintenance and the Plaintiff was qualified for the requested position. There was no justification given to the Plaintiff for this denial.

14.

The Plaintiff was requesting a transfer to the Maintenance Department at this time due in part to the hostile work environment that he was enduring in the Operations Department. Nevertheless, the Plaintiff's requests for a transfer to an open position in the Maintenance Department were denied by human resources and his unit manager, Chad Holman.

15.

On or about December 2013, the Plaintiff was confronted by his unit manager, Chad Holman, regarding his requests for a transfer to the Maintenance Department. This encounter between the two was hostile and Chad Holman told the Plaintiff that his multiple requests for transfer made him appear desperate and that he (the Plaintiff) should just remain in Operations.

16.

The open Maintenance position would have increased Plaintiff's income as a result of greater overtime opportunities, and would have resulted in the Plaintiff being on a regular work schedule, as opposed to the alternating shift schedule in Operations, leading to an increase in the Plaintiff's enjoyment of life.

17.

Additionally, during the Plaintiff's employment in the Operations Department, he requested, on several occasions, an opportunity to be trained as a board operator. However, Plaintiff was repeatedly denied the opportunity to be trained as a board operator.

18.

Each time the Plaintiff was denied training as a board operation, his supervisors, including Chad Holman, gave him a pretextual reason for why he could not be trained as a board operator at that time. However, during the time that he was being denied an opportunity to train

as a board operator, other similarly situated Caucasian employees were receiving training as board operators and some of those employees had not been with the company as long as the Plaintiff. The last time that the Plaintiff was denied training as a board operator was in 2016.

19.

Training on the board would have increased Plaintiff's income as a result of more overtime opportunities, and would have resulted in the Plaintiff being able to work in the control room building, which is climate-controlled building that is a less hazardous environment. Also, the training on the board would have given the Plaintiff an opportunity to gain more knowledge about the plant operations, thus he would have more opportunities to receive promotions and advancement in the company.

20.

On the morning of March 29, 2016, Ron Snyder, a Caucasian co-worker who was acting as a relief supervisor that day, made remarks over the unit radio directed towards the Plaintiff regarding a task that he (Ron Snyder) had assigned to the Plaintiff. These remarks were broadcasted over the unit-wide radio at BRPP. The Plaintiff felt that Ron Snyder's remarks were rude and ill mannered. Later that day, the Plaintiff had a conversation with Ron Snyder about the remarks over the radio. During this conversation, the Plaintiff expressed his displeasure with the way that Ron Snyder talked to him over the unit radio.

21.

Later, on March 29, 2016, Ron Snyder, still acting as the relief supervisor, instructed the Plaintiff to grab a shovel and pick up "that s--- off the ground", which the Plaintiff did despite the fact that this was not his responsibility. Again, these remarks were rude and ill mannered and were said in front of another co-worker, which was embarrassing and humiliating to the Plaintiff.

22.

Subsequently, on March 31, 2016, the Plaintiff again had a conversation with Ron Snyder about their interactions on March 29, 2016. During the conversation, the Plaintiff again expressed his displeasure with the way that Ron Snyder talked to him and requested that he not speak to him that way again.

23.

A short time after this conversation, it was reported to management at BRPP, presumably by Ron Snyder, that the Plaintiff allegedly threatened Ron Snyder during the March 31, 2016 conversation. However, this allegation is false and without merit as the Plaintiff did not threaten Ron Snyder during their conversations.

24.

Nevertheless, the Defendants began an investigation into the allegation and the Plaintiff was placed on administrative leave with pay.

25.

Subsequently, on April 12, 2016, Plaintiff, an African-American, was terminated by his unit manager, a Caucasian, because he had allegedly harassed Ron Snyder, a Caucasian.

26.

In addition to the falsity of this allegation, the Defendants' purported reason for the Plaintiff's termination is pretextual as other similarly situated Caucasian employees did not receive the same discipline as a result of their substantially similar conduct, which was actually threatening and harassing.

## CAUSES OF ACTION:

27.

The Plaintiff reasserts the allegations of paragraphs 5-26 in support of his claims for monetary damages against the Defendants for violations of 42 U.S.C. § 1981(a), Title VII of the 1964 Civil Rights Act, and the LEDL.

### 42 U.S.C. § 1981(a)

28.

At all times relevant hereto, the Plaintiff had an employment agreement with the Defendants.

### Discriminatory Denial of Transfer

29.

At all times relevant hereto, the Plaintiff, an African-American, was qualified for the open position in the Maintenance Department at BRPP.

30.

During 2013, the Plaintiff made several requests to transfer from the Operations Department to an open position in the Maintenance Department. The Plaintiff was qualified for the open positions in the Maintenance Department. However, the Plaintiff's requests for a transfer to the Maintenance Department were repeatedly denied by human resources and his Caucasian unit manager, Chad Holman, without justification.

31.

These denials of transfers were adverse employment actions as the Maintenance positions were more prestigious positions. Specifically, the Maintenance position would have increased Plaintiff's income as a result of greater overtime opportunities, and would have resulted in the

8

Plaintiff being on a regular work schedule, as opposed to the alternating shift schedule in Operations, leading to an increase in the Plaintiff's enjoyment of life.

32.

The Plaintiff's race was a motivating factor in the Defendants' decision to deny the Plaintiff's requested transfer to an open position in the Maintenance Department.

**42 U.S.C. § 1981(a) and the LEDL**

**Discriminatory Denial of Training as a Board Operator**

33.

At all times relevant hereto, the Plaintiff was a qualified Operator at BRPP who was qualified to be trained as a board operator.

34.

During the Plaintiff's employment in the Operations Department, he requested, on several occasions, an opportunity to be trained as a board operator. However, Plaintiff was repeatedly denied, for false and pretextual reasons, the opportunity to be trained as a board operator while other similarly situated Caucasian employees were receiving training as board operators.

35.

This denial of training as a board operator was an adverse employment action as being a board operator was a more prestigious position. Specifically, the training on the board would have increased Plaintiff's income as a result of more overtime opportunities, and would have resulted in the Plaintiff being able to work in the control room building, which is climate controlled building that is a less hazardous environment. Also, the training on the board would

9

have given the Plaintiff an opportunity to gain more knowledge about the plant operations, thus he would have more opportunities to receive promotions and advancements in the company.

36.

The Plaintiff's race was a motivating factor in the Defendants' denial of Plaintiff's training as a board operator.

**42 U.S.C. § 1981(a), TITLE VII, and the LEDL:**

37.

At all times relevant hereto, the Plaintiff was a qualified Operator at BRPP.

38.

On April 12, 2016, the Plaintiff was terminated by his unit manager, a Caucasian, because he allegedly harassed Ron Snyder, a Caucasian. This allegation, however, was false.

39.

In addition to the falsity of this allegation, the Defendants' purported reason for the Plaintiff's termination is pretextual as other similarly situated Caucasian employees did not receive the same discipline as a result of their substantially similar conduct, which was actually threatening and harassing.

40.

The Plaintiff's race was a motivating factor in the Defendants' termination of the Plaintiff's employment.

41.

Because of this discriminatory treatment by the Defendants, the Plaintiff has suffered wage losses, loss of fringe benefits, mental and emotional distress and loss of enjoyment of life.

42.

The Plaintiff has also had to retain the services of an attorney as a result of his discriminatory treatment, and is entitled to recover the attorneys' fees, witness fees, and court costs he has already incurred and that he will continue to incur as this cause proceeds.

### JURY DEMAND

43.

The Plaintiff respectfully demands trial by jury on all issues triable by jury.

**WHEREFORE**, the Plaintiff, Sam Louis, III, respectfully prays for judgment in his favor and against the Defendants, Exxon Mobil Corporation and ExxonMobil Baton Rouge Plastics Plant for such sums as are reasonable in the premises, with all costs, and legal interest thereon from the date of judicial demand, until paid.

**RESPECTFULLY SUBMITTED:**

 /s/ J. Arthur Smith, III
J. ARTHUR SMITH, III (La. Bar Roll #07730)
J. MURPHY DeLAUNE (La. Bar Roll #34512)
SMITH LAW FIRM
830 North Street
Baton Rouge, Louisiana 70802
Telephone: (225) 383-7716
Facsimile: (225) 383-7773
Email: jasmith@jarthursmith.com
    jdelaune@jarthursmith.com
*Attorneys for Plaintiff Sam Louis, III*